IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| Rebecca Lewis,<br><br>        Plaintiff,<br><br>   v.<br><br>Northrop Grumman Ship Systems, Inc.,<br><br>        Defendant. | No. 1:06-cv-00800-LG-RHW<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**<br><br>(Civil Rights-Employment)<br><br>Jury Trial Demanded |

## PRELIMINARY STATEMENT

1. This action seeks injunctive and declaratory relief to prevent continuing, systemic, and unjustified race discrimination by the employer, NORTHROP GRUMMAN SHIP SYSTEMS, INC. ("NGSS"), with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees at NGSS, including severe, pervasive, and ongoing harassment of Black employees through longstanding maintenance of a racially hostile work environment. In addition to injunctive and declaratory relief, and all other available equitable relief, plaintiff seeks compensatory and punitive damages.

## JURISDICTION

2. This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); and Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981"). Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ l343 (3)&(4); 28 U.S.C. § 1331 and 28 U.S.C. § 1337. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

Plaintiff Rebecca Lewis's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00800-LG-RHW

1

## PARTIES

3. Rebecca Lewis was a Black employee of NGSS who was employed by NGSS for over 11 years. Ms. Lewis resigned from NGSS on or about August 20, 2002.

4. NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a business that is engaged in the construction and refurbishing of seagoing vessels, both military and civilian. It is located in Pascagoula, Mississippi. It is an employer for purposes of Title VII. On the basis of information and belief, plaintiff alleges that NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a successor in interest to INGALLS SHIPBUILDING COMPANY.

5. NGSS has received numerous contracts and substantial income from agencies and departments of the Federal Government, and because of the receipt of said contracts and income it is subject to Title VI of the Civil Rights Act of 1964, as amended. NORTHROP GRUMMAN SHIP SYSTEMS, INC., and its predecessor, INGALLS SHIPBUILDING COMPANY, therefore are, and have been, a federal contractor at all times relevant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. All conditions precedent to jurisdiction pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, have been complied with to wit: an appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission, and a notice of right to sue was issued by the Equal Employment Opportunity Commission.

7. Plaintiff has filed a timely complaint based on the time limits contained in section 706 of Title VII of the Civil Rights Act of 1964, as amended.

8. On or about December 20, 2000, the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that a racially hostile work environment existed at NGSS.

9. Attempts at conciliation regarding the finding of a racially hostile work environment, which was and is statutorily required, failed.

Plaintiff Rebecca Lewis's Complaint for                                                                                      2
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00800-LG-RHW

**PROCEDURAL BACKGROUND PRECEDING THIS COMPLAINT**

10. An initial complaint was filed in the United States District Court for the Southern District of Mississippi on March 21, 2001, in which eleven (11) persons, named as representative plaintiffs, and the organization, Ingalls Workers for Justice, alleged class-wide discrimination at NGSS on the basis of race. The case was assigned a case number of 1:01-CV-111(G)(R).

11. A First Amended Complaint was filed on April 26, 2001 in the initial case, additionally alleging maintenance of a racially hostile work environment at NGSS.

12. A Complaint in Intervention was filed on February 13, 2003 in the initial case, necessitated by the Court's dismissal of the following causes of action and parties from the First Amended Complaint on February 28, 2002:

   a) Dismissal of the class action allegations seeking compensatory and punitive damages;

   b) Dismissal of the claim for relief alleged pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*;

   c) Dismissal of the claim for relief alleged pursuant to the Thirteenth Amendment to the U.S. Constitution;

   d) Dismissal of organizational plaintiff INGALLS WORKERS FOR JUSTICE;

   e) Dismissal of defendant LITTON INDUSTRIES; and

   f) Dismissal of defendant NORTHROP GRUMMAN.

13. A Second Amended Complaint was filed on April 7, 2003 in the initial case.

14. On or about March 16, 2004, the initial case was reassigned to the Honorable Louis Guirola, Jr., District Court Judge; on December 30, 2004, the Honorable Robert H. Walker, Magistrate Judge, was assigned to be the Magistrate Judge for the initial case.

15. On August 17, 2006, Magistrate Judge Walker entered an order entitled, "Order Requiring Separate Complaints," which, *inter alia*, severed the plaintiffs' claims from one another, and required the filing of new complaints and assignment of new case numbers for each of the individual plaintiffs in Case No. 1:01-CV-111(LG)(RHW).

Plaintiff Rebecca Lewis's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00800-LG-RHW

3

16. At some point during the period of time from August 17, 2006 through September 7, 2006, plaintiff Rebecca Lewis's severed action was assigned the case number of 1:06-cv-00800-LG-RHW.

## FACTUAL STATEMENT

## RACIAL DISCRIMINATION GENERAL ALLEGATIONS

17. The defendant, NGSS, has intentionally pursued and continues to pursue employment policies and practices that constitute systemic discrimination against plaintiff and other Black employees and that deprive or tend to deprive such persons of equal employment opportunities within NGSS.  NGSS has intentionally implemented these policies and practices, among other ways, as follows:

   a)  By failing to treat Blacks on an equal basis with Whites.

   b)  By using selection devices for promotions that have an adverse impact on Blacks, are not job related and have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures, and have more adverse impact than equally valid alternatives.

   c)  By using evaluation procedures in the consideration of employees for promotions that discriminate against or illegally exclude Black employees from consideration.

   d)  By failing to provide Black employees with equal opportunities for advancement within the company because of their race.  Black employees are denied promotions despite their qualifications and years on the job.  It is not uncommon for a Black employee to be denied a promotion at NGSS in an area she or he has worked in for twenty years and then be assigned to train a White employee with less seniority.

   e)  By maintaining a double standard in the granting of promotions to White employees vis à vis Black employees.  Practices including cronyism, nepotism, word-of-mouth recruitment, failure to post or advertise employment opportunities, and/or the placement of White employees in acting positions have

Plaintiff Rebecca Lewis's Complaint for                                                                                              4
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00800-LG-RHW

      inured to the determent of Black employees historically.

  f) By restricting access to employment opportunities for Black employees and maintaining a workforce in which its supervisory and management personnel has been and continues to be predominately White.

  g) By engaging in a policy in which positions are actually filled even before they may be posted or advertised as an available position.

  h) By demoting Black employees at a disproportionate rate as compared to White employees.

  i) By retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and practices that permeate the work environment at NGSS.

  j) By denying Black employees opportunities to go on trips or sea trials where they would be able to earn substantial amounts of overtime.

  k) By maintaining a practice of "job steering," resulting in Black employees being assigned to, and then denied the opportunity to move out of, dangerous, dirty, and generally less desirable work areas because of their race.

  l) By instituting and allowing the continuance of a racially hostile work environment for Black employees.

    18. This pattern or practice denies the full exercise of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

    19. NGSS has been aware that its actions with regard to the treatment of Black employees were and are in violation of federal statutes prohibiting discrimination on the basis of race.

## SPECIFIC CLAIMS FOR RELIEF

## TITLE VII AND § 1981

    20. Plaintiff incorporates paragraphs 1 through 19, as though fully set forth herein.

Plaintiff Rebecca Lewis's Complaint for  
Injunctive and Declaratory Relief and Damages  
No. 1:06-cv-00800-LG-RHW

5

21. Plaintiff was never promoted in spite of plaintiff's eleven years at NGSS. Plaintiff has applied for promotive positions on numerous occasions, and has been informed by written communication that she was not qualified for some of the positions for which she has applied. However, plaintiff was qualified for the positions for which she applied, but has never been selected. The means used to determine plaintiff to be unqualified have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures. This occurrence includes the following instance:

    a) On or about late 2000, plaintiff applied for a promotion position for which plaintiff was qualified, but for which she was not selected because of her race.

22. Plaintiff was never been promoted in spite of plaintiff's 11 years at NGSS. Plaintiff has applied for promotive positions on numerous occasions, and has been informed by written communication that she was qualified for some of the various positions for which she has applied. Plaintiff was qualified for the positions for which she applied, but has never been selected. The means used to determine that plaintiff would not be selected for a position, for which she was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures. This occurrence includes the following instances:

    a) In 1995-96, plaintiff applied for boat foreman, a position for which plaintiff was qualified, but for which she was not selected because of her race. Frank Lash told plaintiff that she was not promoted because she lacked seniority and they were making the promotion decision based on years of experience. However, Nina Hamilton, a white woman with less experience and fewer years seniority, was promoted.

    b) In 1996-97, plaintiff applied for designer, a position for which plaintiff was qualified, but for which she was not selected because of her race.

    c) In 1998, plaintiff applied for boat foreman, a position for which plaintiff was qualified but for which she was not selected because of her race.

    d) In 1998, plaintiff applied three times to be a designer, a position for which

Plaintiff Rebecca Lewis's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00800-LG-RHW

6

plaintiff was qualified, but for which she was not selected because of her race.

e) In 1999, plaintiff applied for design specialist, a position for which plaintiff was qualified, but for which she was not selected because of her race.

f) In 1999, plaintiff applied for associate designer, a position for which plaintiff was qualified but for which she was not selected because of her race.

g) In 2000, plaintiff applied two times for designer, a position for which plaintiff was qualified but for which she was not selected because of her race.

h) In 2000, plaintiff applied two times for apprentice training instructor, a position for which plaintiff was qualified but for which she was not selected because of her race.

23. Plaintiff worked for 11 years in one or more of the departments at NGSS utilizing a position entitled "leaderman" or "half-hat." Based upon information and belief, plaintiff hereby alleges that no formal means of applying for the position of "leaderman" or "half-hat" at NGSS exist; however, plaintiff is aware that numerous White employees have been selected for the position of "leaderman" or "half-hat" without having made any such interest known. However plaintiff has never been selected for the position in spite of her 11 years at NGSS. Plaintiff has not been informed in any way that she was not qualified for the position of "leaderman" or "half-hat." The means used to determine that plaintiff would not be selected for a position, for which she was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

24. Plaintiff was never promoted in spite of plaintiff's eleven years at NGSS. Plaintiff has observed both that Black employees were not promoted in spite of their qualifications and seniority as well as the lack of qualifications of White employees who were promoted, and, therefore, Plaintiff did not apply for promotive positions for which she was qualified, and plaintiff has never been selected for promotion to any such position. Plaintiff has also observed that the availability of positions was not always publicized. The means used to determine that plaintiff would not be selected for a position, for which she was and is qualified, have never been

Plaintiff Rebecca Lewis's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00800-LG-RHW

7

validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

25. Plaintiff has received less compensation than similarly situated White co-workers for doing the same job. Plaintiff has been made aware of the discrepancy by. Plaintiff became aware of such disparity in at least the following instances:

   a) In plaintiff's department, number 35, White employees working in fiber optics were paid more than their similarly situated Black counterparts.

   b) Plaintiff was informed that the White men in a Department 35 crew were doing "fiber" work and getting higher "tech pay."

26. In or about 1999, Plaintiff made her Supervisor Mike Entriken aware that she desired to receive certain training, including being trained on "the system." However, she was never given the requested training, while her similarly situated White colleagues were trained. Furthermore, the selection process for obtaining training has never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

27. While serving on the Apprenticeship Committee, Plaintiff observed racial job tracking that assigned Black employees at NGSS at a disproportionate rate as compared to White employees to the most undesirable, dirtiest, and dangerous employment environments in the workplace. Plaintiff observed Director of Staffing Dorothy Shaw dictate that more white employees than black employees were to be selected for the Electrical Department. Plaintiff communicated to Shaw her concerns about the disparity in hiring for the Electrical Department. There was no investigation by Shaw nor was there a response provided. In fact, Shaw informed plaintiff that the Apprenticeship Program preferred to hire white employees and that it was of no consequence whether black employees were placed in the least desirable jobs and not able to participate in the program. The Apprenticeship Committee set out to level the hiring decisions for the Electrical Department, however members of "upper management", including Dorothy Shaw, routinely overruled the committee's decisions. In instances where the committee was able to place a Black apprentice into a more desirable department and crew, the worker would be quickly transferred to a less desirable job under less desirable circumstances. In particular, two

Plaintiff Rebecca Lewis's Complaint for  
Injunctive and Declaratory Relief and Damages  
No. 1:06-cv-00800-LG-RHW

8

Dept 35 supervisors, including T.V. Jones, transferred black employees out of their crews without cause and without consulting the apprenticeship committee when it was clear the intent of the apprenticeship program was to strategically place talented workers in areas where they could flourish. Plaintiff complained to Bud Wilkie and Bruce Cook about this. However, there was no corrective action taken. On the other hand, the Apprenticeship Program for the Hull Department, which housed the hottest, dirtiest and least desirable jobs, was routinely directed to hire more black employees than white employees.

28. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to White supervisory personnel and White non-supervisory employees using the term "nigger" or other racial epithets, including in jokes, on a constant basis in a number of places at NGSS. NGSS knows or should have known about use of the term "nigger" and other racial epithets by White supervisory personnel and White non-supervisory employees, but has failed to take steps to prevent or correct promptly its occurrence. Plaintiff has complained about being subjected to such offensive racial epithets, but the response has always been insufficient to remedy the situation. Plaintiff has not complained about each and every instance of having heard this or other racial epithets because plaintiff believed it would be useless so to do given the historical lack of sufficient response on the part of NGSS.

29. Plaintiff has been retaliated against or suffered adverse consequences for opposing NGSS's discriminatory employment practices, in violation of Title VII and § 1981. Such retaliation has included the following instance:

   a) On or about April 21, 2001, plaintiff spoke out at a press conference about disparate treatment at NGSS. The very next day, plaintiff's supervisor Mike Entriken attempted to assign her to the night shift and assigned her other work rather than allowing her to receive the computer training she was supposed to receive. Plaintiff complained to Bruce Cook, who is White, and was then punished by being sent to the bottom of the engine room on the U.S.S. Cole.

30. Plaintiff has been subjected to a hostile work environment based on plaintiff's race.

Plaintiff Rebecca Lewis's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00800-LG-RHW

9

The hostile work environment comprises and/or has culminated in the adverse treatment described in paragraphs 20 through 27, incorporated as though fully set forth herein.

31. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact of presence of offensive racially derogatory writings, depictions, and/or graffiti; ubiquitous use of the word "nigger" and other racist epithets; and nooses at NGSS.

32. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact that Black employees have not been provided equal opportunity with regard to upward job mobility.

33. The hostile work environment based on race to which plaintiff has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and § 1981.

34. NGSS has failed to take steps to remedy and correct promptly the harassing behavior occurring in its workplace. NGSS has failed to promulgate, disseminate, and enforce adequately an anti-harassment policy and failed to provide sufficient training to its employees regarding same. NGSS has failed to respond sufficiently to complaints regarding the harassment as set forth in paragraphs 29 through 32, incorporated as though fully set forth herein.

## APPROPRIATENESS OF EQUITABLE RELIEF

35. Plaintiff will suffer irreparable injury if the declaratory and injunctive relief requested herein is not granted, because NGSS will make employment decisions on the basis of the discriminatory procedures and practices described herein or will not remediate the racially hostile work environment that exists in its workplace. If NGSS is not enjoined from engaging in discriminatory employment practices, plaintiff will be deprived of career opportunities, which plaintiff otherwise would have been able to pursue, but for NGSS's discriminatory employment practices.

36. No plain, adequate, or complete remedy at law is available to plaintiff. Monetary relief cannot adequately compensate the loss of promotional opportunities, experience, and careers with NGSS. Similarly, monetary relief cannot adequately compensate the continued

Plaintiff Rebecca Lewis's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00800-LG-RHW

10

subjection to a racially hostile work environment.

37. Unless restrained by order of this Court, NGSS will continue to pursue policies and practices, which are the same as, or similar to those alleged above.

## FIRST CLAIM FOR RELIEF

38. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 37 and further alleges for a first claim for relief as follows:

39. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

## SECOND CLAIM FOR RELIEF

40. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 39 and further alleges for a second claim for relief as follows:

41. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

## THE APPROPRIATENESS OF COMPENSATORY AND PUNITIVE DAMAGES

42. Defendant NGSS has caused plaintiff emotional distress and mental anguish as a proximate result of its illegal practices, and plaintiff is entitled to compensatory damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

43. Similarly, defendant NGSS was aware that its actions with regard to plaintiff were in violation of federal statutes prohibiting discrimination on the basis of race, and therefore, plaintiff is entitled to punitive damages.

Plaintiff Rebecca Lewis's Complaint for                                                                                                11
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00800-LG-RHW

## PRAYER

WHEREFORE, plaintiff prays that this Court:

a) Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth in paragraphs 1 through 43 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

b) Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

c) Grant equitable relief, including, but not limited to, back pay, sick pay, vacation pay, disability benefits, and seniority rights to plaintiff;

d) Grant such punitive, general, and special damages as proved at trial;

e) Award plaintiff the costs and litigation expenses of this action and reasonable attorneys' fees as provided for in section 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), and the Civil Rights Attorneys Fees Award Act of 1976, as amended, 42 U.S.C. § 1988; and

f) Grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury.

Dated: September 20, 2006

SANDRA JARIBU HILL, Esq.
Mississippi Workers Center for
Human Rights


WILLIAM C. MCNEILL, III, Esq.
The Legal Aid Society-Employment

Plaintiff Rebecca Lewis's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00800-LG-RHW

12

          Law Center

          Counsel for Plaintiffs


        By:  /s/ William C. McNeill, III
           WILLIAM C. McNEILL, III, Esq.


William C. McNeill, III, Esq., MS Bar No. 42867, *Pro Hac Vice*
Denise M. Hulett, Esq., MS Bar No. 44672, *Pro Hac Vice*
Shelley A. Gregory, Esq., MS Bar No. 43443, *Pro Hac Vice*
The Legal Aid Society – Employment Law Center
600 Harrison Street, Suite 120
San Francisco, California  94107
(415) 864-8848

Sandra Jaribu Hill, Esq., MS Bar No. 10684
Mississippi Workers Center for Human Rights
213 Main Street
P.O. Box 1223
Greenville, Mississippi  38702-1223
(662) 334-1122

Plaintiff Rebecca Lewis's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00800-LG-RHW

13

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the following: Paul B. Eason; Maria Candace Burnette; Timothy W. Lindsay; Stephen A. Brandon.

I hereby certify that I have mailed by United States Postal Service the documents to the following non-ECF participants:

Tammi Liddell
3836 Prentiss St.
Moss Point, MS  39563

Willie B. Richmond
1608 Timberlane Road
Gautier, MS  39553

Edna M. Tubbs
P.O. Box 501
Escatawpa, MS  39552

  /s/ Laurel Kapros
Laurel Kapros

Plaintiff Rebecca Lewis's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00800-LG-RHW

14